GUY C. McMILLAN, JR., *et al.*, Plaintiffs-Appellees, *v.* DUANE INGOLIA *et al.*, Defendants-Appellants.

Third District    No. 79-462

Opinion filed August 13, 1980.—Rehearing denied September 24, 1980.

Michael O. Gard, of Swain, Johnson & Gard, of Peoria, for appellants.

Charles G. Roth and Phillip B. Lenzini; both of Kavanagh, Scully, Sudow, White & Frederick, of Peoria, for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is on appeal from an order of the Circuit Court of Peoria County granting to the plaintiffs specific performance of a repurchase option contained in a deed. For the reasons stated hereafter, we reverse.

Early in 1960, the Shell Oil Company decided to expand its service

station located at the corner of Western and Laurel Avenues in Peoria. Consequently, it became interested in purchasing the home of defendants Duane and Ann Ruth Ingolia, which was located next to and south of the service station. Ron Hall of Shell Oil and Frank Schlehuber of Commercial National Realty approached the defendants about the sale of their property to Shell Oil, and initially met with no success. However, the Ingolias eventually did agree to sell their Western Avenue property to Shell Oil for $16,500. As part of the transaction, the Ingolias were to purchase from Shell Oil an adjoining parcel of land, as improved for their residence, on Laurel Avenue (the Laurel Avenue property, which is at the center of this controversy) for $9,000. Shell accordingly obtained options on both the Western Avenue property and the Laurel Avenue property. Subsequently, both of these options to purchase were assigned to plaintiff, Guy McMillan.

Following the exercise of the option to purchase the Laurel Avenue property, the plaintiff grantors conveyed the Laurel Avenue property to the Ingolias on June 29, 1961. The deed conveying this property contained the following provision:

> "Reserving, however, to the Grantors or either of them, or to their successors in interest, that is the owners from time to time of the described real estate, the right to purchase the property herein conveyed to Grantees at any time within five (5) years from today's date, for the sum of $10,000.00, and thereafter the right to purchase at any time within 15-1/2 years from today's date for the price of $11,000.00; said purchase prices to adjust for taxes and special assessments, if any, to the date of purchase."

Representing the Ingolias in the real estate transaction was attorney Edward O'Donnell. Prior to the closing, O'Donnell received from McMillan's attorney, Joseph Sudow, the proposed deed and an accompanying letter indicating that in the deed plaintiffs were "reserving to the McMillans and their successors in interest the right to repurchase." Sudow further stated in his letter to O'Donnell that if the deed met with his approval, he would have it executed by the grantors and ready for exchange at the closing. No evidence was presented during the trial on plaintiffs' second amended complaint for specific performance either proving or disproving that O'Donnell had received and read Sudow's letter. O'Donnell died before the trial began. However, it appears that O'Donnell was present at the closing, and accepted the deed on the Ingolias behalf. Neither Duane nor Ann Ruth Ingolia attended the closing.

After the closing, the deed was delivered to the Peoria Title Company, which recorded it. The recorded deed was then returned to the Ingolias, who placed it in a safety deposit box. Although the deed

remained in the Ingolia's safety deposit box until August of 1976, neither of the Ingolias had read it prior to that time.

On November 30, 1976, nearly 15½ years after the sale of the Laurel Avenue property to the Ingolias, the McMillans sent letters to both Duane and Ann Ruth Ingolia indicating their desire to exercise the repurchase option contained in the deed. The Ingolias refused to sell for the $11,000 offered by the McMillans pursuant to the terms of the repurchase option, and as a result the McMillans brought suit for specific performance.

At the trial, the Ingolias testified that it was not until August of 1976, when the deed was examined in conjunction with divorce proceedings, that they had knowledge of the repurchase option. They further testified that prior to the closing they had no discussion with anyone concerning an option to repurchase, nor would they have agreed to buy the property had they known of it. In addition, Mrs. Ingolia testified that in her opinion the Laurel Avenue property was worth $35,700. On May 21, 1979, an order granting the plaintiffs specific performance of the repurchase option was entered. It is from this order that the defendants appeal.

Basically, two issues are raised by the defendants for our consideration. First, have the plaintiff McMillans proven the essential elements of an oral contract (*i.e.*, the repurchase option) by clear and convincing evidence; and second, if the answer to the first question is in the affirmative, does the recitation of the terms of the repurchase option in the warranty deed conveying title in the Laurel Avenue property to the defendants satisfy the requirements of the Statute of Frauds (Ill. Rev. Stat. 1977, ch. 59, par. 2).

"An option, originally is neither a sale nor an agreement to sell, but is merely a contract by which the owner of property agrees with another person that he shall have the right to purchase the former's property at a fixed price within a certain period." (*Barnett v. Meisterling* (1927), 327 Ill. 564, 570, 158 N.E. 806, 808.) Because an option is a contract, all of the elements necessary for the creation of a contract must exist.

The plaintiffs, relying upon the case of *Moehling v. Pierce* (1954), 3 Ill. 2d 418, 121 N.E.2d 735, take the position that the warranty deed constitutes the contract and that consequently the existence of a contract to repurchase apart from the deed need not be proven. We find *Moehling* to be factually distinguishable and inapposite to the instant case. In *Moehling*, the Illinois Supreme Court affirmed a decree of specific performance compelling conveyance of a parcel of land pursuant to a repurchase option contained in a deed. However, unlike the case at bar, in *Moehling* a real estate sale contract executed prior to the execution of the deed contained the repurchase provisions. In short, in *Moehling*, there was a written contract providing for the repurchase option. In the instant

case, there is no other writing containing the necessary terms of the option contract outside of the deed. The repurchase agreement was essentially parol, and consequently the plaintiffs have the burden of proving all of the essential elements of the contract by clear and convincing evidence. "[T]o justify a decree of specific performance of an oral contract to convey or devise real estate, the proof of the contract must be clear, conclusive, and so convincing as to leave no doubt in the mind of the court * * *." *Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 265, 170 N.E.2d 100, 106.

The two elements the defendants contend are lacking are mutuality of assent and consideration. With regard to the latter, the deed recites that the consideration for the conveyance to be "one dollar and other good and valuable consideration in hand paid." We find this nominal consideration, given in exchange for both the conveyance and the promise to keep open for 15½ years an offer to repurchase, to be sufficient. "[I]f a bargain was intended, the mere fact that the price exacted for the promise was one dollar or less will not defeat the contract on the ground of lack of consideration." Simpson, Contracts 83 (2d ed. 1965).

■ Regarding mutuality of assent, it appears clear from the record that neither Duane nor Ann Ruth Ingolia knew of the repurchase option prior to the closing. All of the details of the real estate transaction were handled by their attorney, Edward O'Donnell. The plaintiffs contend that if the Ingolias gave O'Donnell the authority as their attorney/agent to represent them in the real estate transaction, they also gave him the authority to agree to the repurchase option on their behalf. We disagree. In *Lanski v. Chicago Title & Trust Co.* (1927), 324 Ill. 367, 373, 155 N.E. 296, 298, the Illinois Supreme Court stated:

> "The employment of an attorney at law to advise a client in regard to questions of law which may arise in a business transaction, such as the purchase or sale of real estate in which the client is engaged, does not constitute the attorney the agent of the client to transact the business of the client generally or his business in the particular transaction *except as the attorney is specifically authorized to act*. The attorney may not, unless specifically authorized, receive the purchase money, accept a deed or mortgage, wave any condition or requirement of the contract, or do any other thing to affect the interest of the client whom he has been employed merely to advise." (Emphasis added.)

Further, the specific authority to bind the client must be in writing when at issue is an interest in realty. (Ill. Rev. Stat. 1977, ch. 59, par. 2; *Bruns v. Huseman* (1914), 266 Ill. 212, 107 N.E. 462.) Because there is no writing existing in this case which expressly authorizes Attorney O'Donnell to bind the Ingolias to a 15½-year repurchase option, the conclusion is

inescapable that he was acting outside the scope of his authority when he did so. O'Donnell's lack of authorization and the defendants' ignorance of the existence of the repurchase option at the time of the conveyance of the Laurel Avenue property reflects an absence of the requisite mutuality of assent here.

The plaintiffs respond by arguing that even if O'Donnell acted without express authority to enter into the repurchase option on the Ingolias' behalf, the defendants bound themselves to its terms by accepting and recording the deed and keeping it in their possession for almost 15½ years. In support, the plaintiffs rely on a number of cases which stand for the proposition that one who accepts a deed is presumed to be acquainted with the contents thereof. (*Sanitary District v. Chicago Title & Trust Co.* (1917), 278 Ill. 529, 116 N.E. 161; *Warren v. President & Trustees* (1853), 15 Ill. 236; *Eidman v. Drewes* (1933), 269 Ill. App. 264; *Koester v. Litherland* (1933), 269 Ill. App. 89.

■ Even if we were to accept the plaintiffs' position and were to find that the acceptance and retention of the deed by the plaintiffs for a considerable period of time bound them to its terms, however, we could not enforce the repurchase option because it is violative of the Statute of Frauds. The Statute of Frauds provides:

> "No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party. This section shall not apply to sales upon execution or by any officer or person pursuant to a judgment or order of any court in this state." (Ill. Rev. Stat. 1977, ch. 59, par. 2.)

Under the provisions of the Statute, for the repurchase option (a contract involving the sale of land) to be enforceable, it must be evidenced by a memorandum in writing, signed by the party to be charged or his lawfully authorized agent. The deed in the instant case, which is the only writing evidencing the essential terms of the repurchase option, does not constitute a memorandum sufficient to satisfy the requirements of the Statute. Although the deed was signed by the grantor plaintiffs, it was not signed by the grantee defendants or by their agent, O'Donnell (whose signature would have been ineffective in any event because of the absence of specific authorization, as we have previously discussed). Because we hold that the deed is not a sufficient memorandum to satisfy the Statute of Frauds, the repurchase option is unenforceable.

For these reasons, we reverse the order of the Circuit Court of

Peoria County granting a decree of specific performance of the repurchase options to the plaintiffs.

Reversed.

SCOTT and STENGEL, JJ., concur.