JAMES L. MEARIDA *et al.*, Plaintiffs-Appellees, *v.* PLEASANT R. MURPHY *et al.*, Defendants-Appellants.

Fourth District   No. 17482

Opinion filed May 19, 1982.

706

A. J. Rudasill, of Herrick, Rudasill and Moss, of Clinton, for appellants.

Donald W. Wilcox, Jr., of Thomson, Weintraub & Thompson, of Bloomington, for appellees.

JUSTICE TRAPP delivered the opinion of the court:

Defendants appeal from the judgment of the trial court which granted specific performance of an option to purchase a 28-foot easement across the land of defendants. Plaintiffs are third-party beneficiaries of the option.

In *Mearida v. Murphy* (1980), 87 Ill. App. 3d 87, 409 N.E.2d 145, this court reversed a summary judgment entered in favor of these defendants and remanded the cause for further proceedings. It was then held that the deed controlled a conflicting contract through the operation of merger and that plaintiffs, as third-party beneficiaries, had standing to enforce the option.

The record discloses that plaintiffs and defendants acquired title to two separate parcels of property from people named Evans in 1969. The plaintiffs, by a deed filed February 26, 1969, acquired title to a 40-acre

unimproved tract lying to the south and east of defendants' land and, in addition, a 32-foot easement over property adjacent to the 40 acres and presently owned by the defendants in fee simple. Two weeks prior to the delivery of the deed to plaintiffs, the grantors, Evanses, entered into a contract for sale of approximately 25 acres to defendants. This contract after reciting a legal description of the property conveyed to defendants, recited that it was "subject to" a separately attached document which purported to give defendants two easements over the property that they were purchasing in fee simple. Apparently, the draftors of the Evans-Mearida real estate sales contract had merely Xeroxed the easement contained in the first contract, which identified plaintiffs as parties of the second part, and attached it to the Murphys' contract, which also identified them as parties of the second part, without changing the references to the proper parties.

On March 1, 1969, the Evanses tendered a warranty deed to the Murphys conveying the land but subject to the 32-foot eastment, and also containing the following provision:

> "Grantees agree to give an option to James L. Mearida and Mary K. Mearida, to purchase an additional 28 foot easement West of the above described easement and adjacent thereto which would make an easement of 60 feet in width if purchased, for the sum of $750.00 if said option is exercised by giving notice in writing to grantees within ten (10) years from this date."

Plaintiffs gave timely notice of their intent to exercise this option. Following defendants' refusal, this suit for specific performance was commenced.

Before the cause proceeded after remandment, the defendants amended their answer and raised the defense of the Statute of Frauds, arguing that the option could not be enforced since the defendants had not signed the deed. The defendants then filed a motion for judgment on the pleadings raising this same defense. The trial court took the motion under advisement, and following a bench trial entered a judgment in favor of plaintiffs and ordered the defendants to execute the option.

At the bench trial, Mr. Murphy testified that he was not represented by an attorney during the transaction, and that he could not read; he had completed only the second grade of formal education. His only knowledge of the easement was through what had been explained by Mr. Evans. According to Mr. Murphy, Mr. Evans told him that he had retained a 10-year easement which could be renewed for $750 at the end of that period. Mr. Murphy later testified that his understanding was that the 32-foot easement would last 10 years after which he would be paid the sum of $750 for real estate taxes covering the realty over which the easement lay. Mr. Murphy could not recall any discussion of an additional

28-foot easement, and said that Mr. Evans did not mention that the 40-acre area connected by the easement was sold to the plaintiffs. The first year after purchasing his property from the Evanses, Mr. Murphy farmed the area that included the easement. A year later, Mr. Mearida informed Mr. Murphy that he owned a 32-foot easement and requested him to move a fence, which Murphy had placed over the easement. Mr. Murphy removed the fence, and Mr. Mearida subsequently leveled off the area, cut ditches and spread gravel over its length.

Evans, the common grantor, testified that while he could not remember specific conversations between Murphy and himself, he was certain that he had discussed all material aspects of the agreement with Murphy. Evans denied describing the easement in the terms Mr. Murphy alleged, and stated that he was not aware that Mr. Murphy could not read until the hearing.

Plaintiff James Mearida testified that in 1969 he informed Pleasant Murphy that he owned the 32-foot easement and that in 1974 Murphy had asked plaintiff whether he intended to pick up the option for the remaining 28 feet. Mearida testified that he needed a 60-foot easement to move heavy equipment around the two 90-degree curves on the easement and speculated that with only the 32-foot easement the road had a tendency to drift shut during the winter snows, due to the proximity of Mr. Murphy's fence along the 32-foot easement. He felt that with the 60-foot easement such drifting problems would not occur.

In granting specific performance the trial court concluded that defendants were estopped to plead the Statute of Frauds. The court also held that the contract was definite, reasonable, and capable of being specifically performed, and found that Murphy's evidence that he was not aware of the option clause was not convincing.

Defendants raise three issues for our consideration; (1) whether the Statute of Frauds prevents the enforcement of the option contract contained in the deed; (2) whether the option is specific, fair, reasonable, and was free from misapprehension, and (3) whether the trial court erred in admitting into evidence the real estate sales contracts of both parties.

The defendants argue that the acceptance of the deed by them, which was not signed, renders unenforceable the option contract to the Mearidas. This argument is predicated on section 2 of the Statute of Frauds (Ill. Rev. Stat. 1979, ch. 59, par. 2), which provides:

> "No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing,

signed by such party. This section shall not apply to sales upon execution or by any officer or person pursuant to a judgment or order of any court in this state."

The plaintiffs take issue with this argument and contend that defendants are estopped to assert the Statute of Frauds by accepting the deed and the benefits thereunder, while at the same instance seeking to repudiate a part of its terms.

■■ It is settled in Illinois that the acceptance by the grantee of a deed conveying an interest in land and containing a covenant or agreement to be performed in the future, followed by the grantee's entering into possession of the premises, binds the grantee to the performance of the agreement as effectually as if he had signed the deed. (*Powell v. Powell* (1929), 335 Ill. 533, 167 N.E. 802; *Eidman v. Drewes* (1933), 269 Ill. App. 264; *Koester v. Litherland* (1933), 269 Ill. App. 89; but see: *McMillan v. Ingolia* (1980), 87 Ill. App. 3d 727, 410 N.E.2d 162.) In the instant case, the defendants received delivery of and recorded the deed, and have accepted the benefits for over 10 years. Although Murphy claims he was not aware of the option agreement, the trial court found, on conflicting evidence, some awareness on his part of the option. The evidence indicates that although Mr. Murphy was semi-illiterate, the grantor testified that the material terms were explained to Mr. Murphy, and the testimony of plaintiffs indicated some awareness of the option on Mr. Murphy's part.

We note that the case of *McMillan* relied upon by defendants suggests a contrary result, but we believe the argument of estoppel to plead the Statute of Frauds was not supported by the record in that case.

In *McMillan*, the evidence showed that the defendants had not been present at the closing of the transaction, that they had not been advised of the option at the time of accepting their deed, and that they were unaware of plaintiffs' claim of option until approximately 15 years after the transaction. Thus, no elements of estoppel could be found in the record.

The defendants next argue that specific performance is inappropriate since the evidence does not support the conclusion that the agreement was just, fair, reasonable, and understandingly entered into by defendants, relying principally on *Lannon v. Lamps* (1980), 80 Ill. App. 3d 318, 399 N.E.2d 712.

■■ Special considerations are applicable when relief of specific performance is requested. It is settled that specific performance of a contract is not to be accorded as a matter of right, but the decision to award such relief rests in the sound discretion of the chancellor (*Kukulski v. Bolda* (1953), 2 Ill. 2d 11, 116 N.E.2d 384), whose decision will not be upset absent an abuse of discretion, or unless his action is contrary to the manifest weight of the evidence. (*Johnson v. Gianacakos* (1934), 356 Ill.

410, 190 N.E. 691.) To entitle a party to equitable relief, the inadequacy of a legal remedy is a familiar prerequisite to equitable jurisdiction (*In re Estate of Johnson* (1976), 39 Ill. App. 3d 246, 350 N.E.2d 310), and the contract should be specifically enforced only when it is clear that the agreement is just, reasonable, and was free from misapprehension or misrepresentation. *Lannon.*

The defendants' principal argument is simply that the option is unjust, unreasonable, and was misapprehended by them. While we note that the evidence of the need for the additional 28-foot easement to extend the granted 32-foot easement was arguable, we do not consider this as the sole consideration. The evidence reflected that the price for the easement at the time of the deed was a fair one, and Mr. Murphy's testimony that he was not aware of the option for the 28-foot easement was not accepted by the trial judge. The trial court found that defendants had accepted the deed with knowledge of the 28-foot easement, and defendants have not argued that this finding on appeal is against the manifest weight of the evidence. Evans related his observation that defendants understood the option, and Mr. Mearida indicated that Mr. Murphy had once asked him whether he intended to purchase the additional 28-foot strip. While we are not unmindful that defendants denied any understanding of the 28-foot easement or explanation of such by Evans, we believe these questions of credibility were for the trial court as the finder of fact. While we may not have reached the same conclusion as did the trial court, it is not our prerogative to make the initial assessment. We cannot say that the trial judge's determination of the justness and reasonableness of the option was an abuse of discretion, or contrary to the manifest weight of the evidence.

Defendants compare at length the similarity between this case and *Lannon*, wherein the court refused to specifically enforce an option contract on the ground of the unconscionable nature of the agreement. In *Lannon*, two 80-year-old brothers, who owned 160 acres near an interstate and State highway, granted an option for $10 to an attorney and pharmacist to lease for 99 years farmland for $200 per acre per year. The elderly gentlemen were both suffering from cerebral arteriosclerosis and did not understand the nature and terms of the agreement. In light of these facts, the trial court and the appellate court held that the option was unconscionable. We find this situation distinguishable from the present case.

The evidence at bar shows that defendants had made previous transactions in real estate without an attorney, though they realized that assistance was available to them. The elderly brothers in *Lannon* may not have realized they could have had an attorney. The fact that Mr. Murphy could not read also is not comparable to the insuperable disability of the

defendants in *Lannon*. Mr. Murphy could have had his wife read the contract to him, which she did not do, and there is sufficient evidence in the record to indicate that defendant understood the deed and the implications of its terms. The trial court found that the consideration for the option was reasonable, which defendants have not challenged on appeal.

We also believe that the option contract was sufficiently definite to be specifically enforced in equity. The description of the easement was made as being west of and adjacent to the legally described 32-foot easement; the parties were clearly identified; the price was stated; and the manner of its exercise was provided for.

■■ Lastly, we reject defendants' argument that the trial court erred on grounds of relevance in admitting the real estate sales contracts of the Murphys and the Mearidas. Defendants' assertion that the option agreement in the deed was unfair and unjust could only be evaluated by looking to the prior agreements involved in the entire real estate transactions. When we indicated in our prior opinion that the contract had merged into the deed, we meant only that whether an operative option agreement was created was to be determined from the terms of the deed. In view of defendants' broad-based challenge to the entire fairness of the transaction between the parties, and to the justness of the option agreement, the contracts were relevant to a finding whether specific performance should be granted. The question of whether equity should act in a given case is necessarily dependent upon an assessment of the totality of the circumstances to determine if there had been fraud, undue advantage, or unfairness in securing the agreement. (*Kilcoin v. Ortell* (1922), 302 Ill. 531, 135 N.E. 16; *Lannon*.) We find no error in the contracts' admission.

The order of the trial court granting the plaintiffs specific performance of the option clause contained in the deed accepted and retained by defendants is affirmed.

Affirmed.

GREEN, P. J., and WEBBER, J., concur.