NOTICE
Decision filed 03/07/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230403-U

NO. 5-23-0403

IN THE

APPELLATE COURT OF ILLINOS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| NORMAN CONRAD, NANCY THOUVENIN, and CHARLES CONRAD, | ) ) ) | Appeal from the Circuit Court of Clinton County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 22-CH-4 |
| TAUNA R. CONRAD and CORY M. CONRAD, | ) ) ) | |
| Defendants | ) ) | Honorable Stanley M. Brandmeyer, |
| (Tauna R. Conrad, Defendant-Appellant). | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Barberis and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The judgment of the circuit court is affirmed. The circuit court properly granted summary judgment in favor of plaintiffs and denied the defendant's motion for summary judgment after considering the arguments made concerning the statute of frauds.

¶ 2    The defendant, Tauna R. Conrad, appeals the March 14, 2023, order of the circuit court of Clinton County that granted summary judgment in favor of the plaintiffs, Norman Conrad, Nancy Thouvenin, and Charles Conrad, and denied her motion for summary judgment. For the reasons that follow, we affirm the circuit court's order.

1

¶ 3                                    I. BACKGROUND

¶ 4    On September 10, 2004, four siblings, Norman Conrad, Nancy Thouvenin, Charles Conrad, and David Conrad, conveyed to David and his spouse, the defendant, Tauna Conrad, real estate referred to as the "Conrad Land" via a representative's deed. The representative's deed contained language that allowed the siblings to repurchase the real estate. It stated:

> "As additional consideration for this sale, the GRANTEES grant, transfer and convey to the GRANTORS for the GRANTORS joint life times [*sic*], the right to repurchase the property described herein for the same consideration as GRANTEES have paid to the GRANTORS for the sale. This right to purchase expires upon the death of the last of the GRANTORS."

¶ 5    Tauna and David purchased the Conrad Land, which consisted of 112.82 acres of land in Clinton County, for $169,200. It is undisputed that the purchase price was below market value. Tauna testified that the purchase price was discounted because they were family and due to the repurchase covenant in the deed.

¶ 6    Tauna received a draft of the representative's deed prior to the closing. Tauna was present at the closing and the representative's deed was in the same form as the draft she had received. Tauna accepted delivery of the representative's deed knowing that it contained a restriction on what she could do with the real estate. Tauna has possessed the real estate since the closing, and she has received the income from the renting of the farmland since the date of the representative's deed.

¶ 7    David died on March 4, 2018. On May 29, 2019, Tauna executed, delivered, and recorded a quitclaim deed with a reservation of a life estate for the Conrad Land to her and David's son, Cory Conrad. The quitclaim deed contained, *inter alia*, the following language:

"This conveyance is **subject to** the terms and conditions of a 'Right to Repurchase' the property in favor of Nancy Thouvenin, Charles Conrad and Norman Conrad for the sale price of $169,200 for their individual lifetimes as contained on the Deed dated September 10, 2004 and recorded September 10, 2004 as Document Number 2004R06583." (Emphasis in original.)

¶ 8    On April 4, 2022, Norman, Nancy, and Charles notified Tauna of their intent to exercise their repurchase option. Tauna refused.

¶ 9    On April 19, 2022, the plaintiffs filed a complaint to enforce the sale of real estate against the defendants, Tauna and Cory.[1] In response, on May 17, 2022, Tauna filed a motion to involuntarily dismiss the complaint pursuant to section 2-619(a) of the Code of Civil Procedure (735 ILCS 5/2-619(a) (West 2022)), arguing that she did not sign the representative's deed and thus, applying the statute of frauds (740 ILCS 80/2 (West 2022)), the complaint should be dismissed. On July 12, 2022, the circuit court held a hearing on the motion to dismiss and denied the same. On September 15, 2022, Tauna filed an answer to the complaint and asserted her statute of frauds argument as an affirmative defense.

¶ 10    On October 3, 2022, Tauna filed a motion for summary judgment, which she supported by attaching her own affidavit. Tauna's motion for summary judgment referenced the arguments that were presented to the circuit court regarding the motion to dismiss. Tauna's motion for summary judgment argued that the four arguments previously made by the plaintiffs as to why enforcement of the covenant is not barred by the statute of frauds must fail. First, Tauna argued regarding her signature on the quitclaim deed with a reservation of a life estate. Tauna alleged that none of the

---

[1]Cory was served with process; however, he did not enter an appearance and did not participate in the litigation in the circuit court, nor has he entered his appearance in the present action in the appellate court.

plaintiffs are a party to the quitclaim deed, that the quitclaim deed states that it is "subject to" the terms and conditions of the covenant, but this is not an acknowledgment of the validity of the covenant, and that her signature on the quitclaim did not acknowledge and accept the terms and conditions of the covenant. Second, Tauna argued that her husband, David, was not authorized to sign the representative's deed on her behalf. Third, Tauna argued that the statute of frauds did apply. Finally, Tauna argued that the plaintiffs' partial performance did not remove the transaction from the statute of frauds.

¶ 11     On November 2, 2022, the plaintiffs filed a cross-motion for summary judgment. The plaintiffs' motion for summary judgment is supported by the attached deposition testimony of Tauna. The plaintiffs' motion for summary judgment argued that the statute of frauds is not an affirmative defense to the requested specific performance.

¶ 12     The circuit court conducted a hearing on the cross-motions for summary judgment on March 7, 2023. The circuit court entered a written order on March 14, 2023, that granted the plaintiffs' motion for summary judgment and denied Tauna's motion for summary judgment.

¶ 13     On March 23, 2023, the plaintiffs filed a motion to modify the court's March 14, 2023, judgment and order on motions for summary judgment. On March 28, 2023, Tauna filed a motion to clarify the judgment, which was denied.

¶ 14     The circuit court held a hearing on the plaintiffs' motion to modify the order and entered an additional order on May 18, 2023. The May 18, 2023, order, *inter alia*, found there was no just reason for delaying either enforcement or appeal of the circuit court's March 14, 2023, order. Additionally, the May 18, 2023, order addressed the payment of the purchase price for the Conrad Land and a special warranty deed.

4

¶ 15    Tauna filed her timely notice of appeal on June 12, 2023. Additional facts will be presented, if necessary, in the analysis.

¶ 16                                II. ANALYSIS

¶ 17    On appeal, Tauna challenges the circuit court's granting of summary judgment in favor of the plaintiffs and the denial of her motion for summary judgment based on the statute of frauds defense she raised. Tauna argues that since she did not sign the representative's deed that contains the repurchase covenant it cannot be enforced against her. The plaintiffs argue, *inter alia*, that Tauna is estopped from asserting the statute of frauds as a defense due to her acceptance of the deed and possession of the real estate for her enjoyment and benefit since September 2004. Alternatively, the plaintiffs argued that the 2019 quitclaim deed signed by Tauna satisfies the writing requirement and thus the statute of frauds is not applicable.

¶ 18    The circuit court's March 14, 2023, order included a section titled "Findings of Court" that included a recitation of legal authority regarding summary judgment and the statute of frauds. As to the statute of frauds, the order cited legal authority regarding more than one writing being taken together to satisfy the statute of fraud. After setting forth the legal authority, the circuit court's order stated,

> "In considering the foregoing, the uncontroverted facts at issue show that there is no genuine issue of material law or fact which this Court need consider. The Plaintiff's Motion for Summary Judgment is granted in all respects and against the Defendant. The Motion for Summary Judgment filed by the Defendant, against Plaintiff[s], is denied. This is a final and appealable Order."

¶ 19    Motions for summary judgment are governed by section 2-1005 of the Code of Civil Procedure, which provides that summary judgment should be granted only where "the pleadings,

depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28.

¶ 20    "Rulings on motions for summary judgment are reviewed *de novo*." *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34. We may affirm a grant of summary judgment on any basis contained within the record. *Id.*

¶ 21    There is no dispute regarding the facts of this matter. The circuit court was presented, and now this court is, with a question of law—is the repurchase covenant contained in the representative's deed and the quitclaim deed enforceable or is it barred by the statute of frauds?

¶ 22    Section 2 of the statute of frauds provides:

"No action shall be brought to charge any person upon any contract for the sale of lands *** for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party." 740 ILCS 80/2 (West 2022).

¶ 23    The representative's deed contained, *inter alia*, the following:

"As additional consideration for this sale, the GRANTEES grant, transfer and convey to the GRANTORS for the GRANTORS joint life times [*sic*], the right to repurchase the property described herein for the same consideration as GRANTEES have paid to the GRANTORS for the sale. This right to purchase expires upon the death of the last of the GRANTORS."

The representative's deed was signed by David, Nancy, Charles, and Norman. The quitclaim deed contained, *inter alia*, the following:

> "This conveyance is **subject to** the terms and conditions of a 'Right to Repurchase' the property in favor of Nancy Thouvenin, Charles Conrad and Norman Conrad for the sale price of $169,200 for their individual lifetimes as contained on the Deed dated September 10, 2004 and recorded September 10, 2004 as Document Number 2004R06583." (Emphasis in original.)

The quitclaim deed was signed by Tauna, as the grantor, and Cory, as the grantee.

¶ 24    The same issue presented in this matter was addressed in *Mearida v. Murphy*, 106 Ill. App. 3d 705 (1982). In *Mearida*, the defendant, Murphy, accepted a deed that he did not sign, that gave the grantor, Mearida, the option to purchase a 28-foot easement. A suit for specific performance was commenced and Murphy alleged that since he did not sign the deed the statute of frauds rendered the option to purchase the easement unenforceable. A bench trial was conducted, and Murphy testified that he was not represented by an attorney during the transaction, that he could not read, and he had only completed the second grade of formal education. Murphy testified that he was told that a 10-year easement had been retained which could be renewed after 10 years for the payment of $750. Murphy later testified that his understanding was that the 32-foot easement would last 10 years and then he would be paid $750 for real estate taxes covering the realty over which the easement lay. Mearida testified that he did not recall the specific conversation he had with Murphy but that he had discussed the material aspects of the agreement with Murphy. The trial court found, and the appellate court affirmed, that Murphy was estopped to plead the statute of frauds.

¶ 25    The *Mearida* court stated:

"It is settled in Illinois that the acceptance by the grantee of a deed conveying an interest in land and containing a covenant or agreement to be performed in the future, followed by the grantee's entering into possession of the premises, binds the grantee to the performance of the agreement as effectually as if he had signed the deed." *Id.* at 709.

Further, the *Mearida* court noted that Murphy received delivery of and recorded the deed and accepted the benefits of the real estate for over 10 years. "Although Murphy claims he was not aware of the option agreement, the trial court found, on conflicting evidence, some awareness on his part of the option." *Id.* Accordingly, estoppel applied, and the statute of frauds did not defeat the claim.

¶ 26    In the present case, Tauna testified that that she graduated from high school and attended some classes at Kaskasia College. Her employment history included working 18 years as a secretary at the Clinton County courthouse in the probation office and state's attorney's office and working for 5 years as a secretary for a private attorney.

¶ 27    Tauna testified that the first parcel of real estate she purchased was a home in Shattuc that she purchased with David. She attended the closing for that real estate and reviewed the deed to the property at the closing. This property was later sold in the 1980s, and Tauna attended the closing for the sale of the property.

¶ 28    Tauna testified that she read the representative's deed prior to purchasing the Conrad Land. She testified that the repurchase covenant was in the deed she read prior to the closing and was the same language in the representative's deed at the closing. Tauna was asked what the clause meant to her, and she testified, "What this conveys to me and what I heard at our meeting was if we wanted to sell it we had to offer it to the siblings first at the price that we paid for it." Tauna's reply brief filed in this matter states, *inter alia*, as follows:

8

"There is no issue regarding the language of the deed or whether it is ambiguous or not. The Representative's Deed clearly conveys to the Appellees a repurchase right. However, the Representative's Deed is just as clearly not signed by Tauna, and is therefore not enforceable against her due to the Statute of Frauds."

¶ 29 Tauna testified that she and David purchased the Conrad Land for a discount of approximately 33% less than the market value of the land. She testified that she believed she and David received the real estate for a discounted price because they were family and partly because of the repurchase right contained in the representative's deed.

¶ 30 Tauna testified that she accepted and received the deed with an understanding that there was a restriction on what could be done with the property. She believed the restriction to be that the real estate had to be offered for sale to the Conrad siblings before it could be sold to someone else. Tauna has been receiving rental income from the Conrad Land since its transfer pursuant to the representative's deed in 2004. The representative's deed was recorded in Clinton County on September 10, 2004.

¶ 31 As in *Mearida*, in the instant case, Tauna received delivery of and recorded the representative's deed. Tauna has accepted the benefits of owning the real estate for more than 19 years. Although she claims her understanding of the repurchase covenant is different than the plain language of the clause, her own testimony established that she had the opportunity to review it prior to the closing and was aware that a restriction was contained within the representative's deed. Accordingly, we find that Tauna accepted the deed conveying a land interest to her that contained the repurchase covenant, that she accepted possession of the real estate, and she is bound to the performance of the repurchase covenant. *Mearida*, 106 Ill. App. 3d at 709. Tauna is estopped from asserting the statute of frauds. *Id.*

¶ 32　Additionally, we find that the quitclaim deed signed by Tauna in 2019 also defeats her statute of frauds defense. "It is not necessary, in order to take the contract of sale out of the statute of frauds, that there be a formal written contract, nor is it necessary that the written memorandum be complete in one writing." *Western Metals Co. v. Hartman Ingot Metal Co.*, 303 Ill. 479, 482 (1922). When evaluating multiple writings, it is "well established that the signed writing or writings must refer expressly to the other writing." *Id.* at 483. Further, "[t]he signed paper must refer to the unsigned paper in clear in distinct terms." *Id.*

¶ 33　The quitclaim deed states:

> "This conveyance is **subject to** the terms and conditions of a 'Right to Repurchase' the property in favor of Nancy Thouvenin, Charles Conrad and Norman Conrad for the sale price of $169,200 for their individual lifetimes as contained on the Deed dated September 10, 2004 and recorded September 10, 2004 as Document Number 2004R06583." (Emphasis in original.)

The foregoing expressly referenced the representative's deed and included the document number that it was recorded as. The quitclaim deed was signed by Tauna. Accordingly, the statute of frauds does not apply to prohibit the repurchase covenant.

¶ 34　　　　　　　　　　　　　　　III. CONCLUSION

¶ 35　For the foregoing reasons, we affirm the March 14, 2023, order of the circuit court of Clinton County which granted summary judgment in favor of the plaintiffs and denied the defendant's motion for summary judgment.

¶ 36　Affirmed.

10